UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE,

        Plaintiff,

v.

WARREN CONSOLIDATED SCHOOLS,
JOHN MOORE, DR. JAMES CLOR,
DAVID WALSH, JOSEPH SAYERS,
and GREG BISHOP,

        Defendants.

CIVIL CASE NO. 05-71735
HON. MARIANNE O. BATTANI

_____/

## OPINION AND ORDER DENYING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.     INTRODUCTION

Before the Court is defendant John Moore's Motion for Summary Judgment (Doc. #68). Plaintiff filed this lawsuit in April 2005, alleging that John Moore sexually harassed and discriminated against her in violation of 42 U.S.C. § 1983, Title IX, and the Elliot-Larsen Civil Rights Act.  Moore seeks summary judgment, contending that Plaintiff's claims against him fail because all contact between the two during the time periods set forth in Plaintiff's Complaint was consensual, and thus, her constitutional rights were not violated.[1]

### II.    STATEMENT OF FACTS

---

[1] At a February 14, 2007, hearing, the Court dismissed Plaintiff's Title IX and Elliot-Larsen Civil Rights Act claim against Moore.  However, the Court held its decision on Plaintiff's § 1983 claim in abeyance, and the viability of that claim is the sole issue before the Court at this time.

During the 2001-02 school year, Plaintiff was a senior at Cousino High School in Warren, Michigan, where she was actively involved in the school's instrumental music program. She took multiple music classes, played in the school's marching band, and would participate in various musical competitions. In January of 2002, while she was an 18 year-old senior, Plaintiff began a relationship with her band teacher, defendant John Moore. One evening after her volleyball practice ended, Plaintiff stopped by Moore's office in the band room to talk. Plaintiff testified that after having a personal conversation with him and hugging, Moore kissed her on the mouth. Dep. of Pl., at 24.

Over the following months, their relationship grew more serious. They began seeing each other on a regular basis, at first in Moore's office at the school. However, as the relationship grew to be more physical, they began meeting at various locations outside of school including Moore's car, Plaintiff's home, Moore's home, and motels. While she was still in high school and he was her teacher, Moore performed oral sex on Plaintiff, and she stimulated his penis with her hand.

Plaintiff testified that Moore would write passes for her so that she could leave school property during school hours, and the two of them would engage in sexual acts. Id., at 153-55. Moore admitted that he would write passes for Plaintiff to leave the building, but did not admit to engaging in sexual activity on those occasions. Dep. of Moore, at 48. Plaintiff testified that she eventually began to feel uncomfortable in the relationship. Dep. of Pl., at 48-49. She testified that on multiple occasions she had been in his car and he refused to let her leave by either continuing to drive or, in one instance, holding her arm. Id., at 54.

Plaintiff testified that by April of 2002, she hated the relationship, but she continued to write Moore love notes to please him and because she felt threatened and coerced. See, id., at 155-57. She also testified that there were numerous occasions where Moore would pressure her to engage in sexual acts, but could not remember exactly when or what dates those occasion occurred. Id., at 111.

Plaintiff testified that she considered reporting the relationship to the principal or the school district and told Moore of her intentions. Id., 155-57. According to Plaintiff, Moore threatened her with a failing grade in response. Id. Plaintiff also testified that Moore would treat her differently if he was upset with her by "calling [her] out during band class to embarrass me, then I would get mad and I think this is not worth it and think about reporting him." Id. However, she testified that she never became angry enough to do so. Id. Plaintiff also testified that Moore threatened to tell her parents about the relationship if she stopped having physical relations with her. Id., at 47.

Nevertheless, during the course of the relationship Plaintiff and Moore exchanged dozens of notes, cards, e-mails, and diaries. Many of Plaintiff's notes emphasize that she was an 18 year-old adult who made a conscious decision to engage in a relationship with another adult. See Def. Moore's Ex. 1. She also kept a private diary that she later gave to Moore, in which she emphatically describes how much she loves him. Def. Moore's Ex. 2. In discussing her feelings about Moore, Plaintiff wrote: "I know it's hard for him to believe that an 18 year old is in love with him. But I don't know how else to convince him. I tell him all the time that I love him, and I truly mean it. I am NOT saying it just to make him happy." Def. Moore's Ex. 2, at p. 10 (emphasis in original). She admitted that as of March 28, 2002, she had a crush on John Moore

3

and was infatuated with him.  Id., at 40.  She acknowledged signing many of the notes she gave

him with the moniker "Jennifer Moore", as if she were to be his future wife.  Id., at 44.

Nor did Plaintiff tell anybody that Moore was forcing or threatening her to have a

physical relationship with him.  Id., at 45.  Plaintiff identified a time that she and Moore were

parked in a car behind K-Mart when a Police Officer approached them and questioned her.  Id.,

at 172-73.  Plaintiff testified that she "deceived" the police officer about the existence of their

relationship.  Id ,at 172.  During the course of the relationship Plaintiff alleges that Moore told

her he was confronted by the school principal about the relationship.  Id ,at 160-61.  She testified

that she knew she could have gone to the principal and reported the relationship, but, decided not

to because she knew the ramifications of that decision.  Id., at 157.

Plaintiff graduated in June of 2002.  Their relationship continued throughout the summer.

Dep. of Pl., at 50-51.  During the summer, Plaintiff continued to write Moore notes, in which she

expressed her love for him.  Id.  Plaintiff started college that fall at Eastern Michigan University,

but the physical relationship did not end until the spring or summer of 2003.   Thereafter Moore

began stalking and harassing Plaintiff.  He was eventually charged in Macomb County with

stalking, to which he pled no contest.

## III.    STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be

granted when "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact.  See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002).  "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court -- that there is an absence of evidence to  support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue.  FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002).  "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict."  Anderson v. Liberty Lobby Inc., 477 U.S. 242,  256 (1986).  The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor.  See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties."  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)(citation omitted)(quoting BLACK'S LAW DICTIONARY 881 (6th ed.

1979)).  To create a genuine issue of material fact, the nonmovant must do more than present

some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the
> nonmoving party for a jury to return a verdict for that party.  If the [nonmovant's]
> evidence is merely colorable, or is not significantly probative, summary judgment
> may be granted.

Anderson, 477 U.S. at 249-50.  "No genuine issue of material fact exists when the 'record taken

as a whole could not lead a rational trier of fact to find for the non-moving party.'"  Mich. Paytel

Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002)(quoting Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  However, the mere existence of a

scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient

evidence upon which a jury could reasonably find for the non-movant.  Anderson, 477 U.S. at

252.

## IV.    ANALYSIS

Plaintiff asserts a claim under 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the Constitution and laws, shall
> be liable to the party injured . . . .

Plaintiff contends that Moore used his authority as a state actor to continue a physical

relationship with her by threatening to fail her and threatening to tell her parents about the

relationship if she broke it off.  Plaintiff maintains that this alleged coercion by a state actor

amounts to a violation of her constitutional right to personal security and bodily integrity.

> [A] schoolchild's right to personal security and to bodily integrity manifestly
> embraces the right to be free from sexual abuse at the hands of a public school
> employee.  The substantive component of the Due Process Clause protects

6

> students against abusive governmental power as exercised by a school. *See*
> Howard v. Grinage, 82 F.3d 1343, 1349 (6th Cir. 1996). To be sure, the
> magnitude of the liberty deprivation that sexual abuse inflicts upon the victim is
> an abuse of governmental power of the most fundamental sort; it is an unjustified
> intrusion that strips the very essence of personhood. If the "right to bodily
> integrity" means anything, it certainly encompasses the right not to be sexually
> assaulted under color of law.

Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ., 103 F.3d 495,

506-507 (6th Cir. 1996).

This case, like Claiborne County, raises the question of whether Moore's actions can be

considered an intrusion upon Plaintiff's bodily integrity that rises to the level of a constitutional

violation. However, unlike Claiborne County, the facts here are atypical in that Plaintiff was a

consenting adult at the time the relationship commenced. There is substantial evidence that

Plaintiff, who was eighteen, consented to - and even encouraged - the relationship which

continued well after graduation from high school.

Plaintiff admitted during her deposition that she never demanded that the relationship

stop during her senior year of high school. Dep. of Pl. at 160. Moreover, after Plaintiff made

her allegations against Moore, Detective John Barnes of the Warren Police Department was

assigned to determine if any wrong doing had occurred when Plaintiff was in high school.

Detective Barnes determined that Plaintiff was 18 years old and the relationship was consensual.

Dep. of Barnes at 34. He also determined based on Plaintiff's own admissions that Defendant

Moore had never threatened Plaintiff to continue the relationship. Id. No charges were brought

in regard to events that occurred during high school.

Nonetheless, this is a civil case with a much lower burden of proof than necessary to

sustain a criminal charge. The evidence shows that Plaintiff denied being threatened both to the

police and to defendant's forensic psychologist.  Dep. of Barnes, at 34, Def.'s Ex. 5, Report of

Dr. Greiffenstein.  Yet in her deposition she testified that he "threatened" her with a failing grade

and fear of  telling her parents.  She also testified that "he had used his authority as a teacher to

get with me more emotionally, and control me."  Dep. of Plaintiff, at 155-157.  Although these

apparent inconsistencies may go to the weight of Plaintiff's claim, they do not bar it.

The question is whether Moore's actions, in light of all of the evidence, can be

considered an intrusion upon Plaintiff's bodily integrity that rises to the level of a constitutional

violation.    The Court finds that given the teacher/pupil relationship, the school setting in

which this first took place, and Plaintiff's allegations that Moore threatened retaliation if

Plaintiff disclosed the relationship, there is a question of fact whether the relationship was in fact

consensual, and thus, whether Defendant deprived Plaintiff of her right to bodily integrity.

## V.       CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that John Moore's Motion for Summary

Judgment on Plaintiff's 42 U.S.C. § 1983 is **DENIED.**

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE


DATED: April 5, 2007




## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
DEPUTY CLERK
